### L. V. F. RANDOLPH V. E. Y. BROWN ET AL.

Decided October 28, 1899.

**1. Chattel Mortgage—Sequestration—Creditors.**

As assignee of a chattel mortgage who, having sued the mortgagors and an attaching creditor, sequestered the property and paid off the attaching creditor whose lien was adjudged the prior one, is not a mere volunteer or meddler as regards attaching creditors subsequent to the assignment of the mortgage, and is entitled to relief as against them though his mortgage be not duly registered.

**2. Same—Paying Off Prior Lien—Reimbursement.**

Where the holder of a chattel mortgage has sequestered the property and paid off the claim of an attaching creditor adjudged to have the prior lien, he is entitled, as against subsequent creditors, and though his mortgage be defective as to registry, to be reimbursed to the extent of such prior incumbrance discharged by him before he can be required to account for the value of the property he has so taken by sequestration.

**3. Same—Change of Possession as Against Creditors.**

Though the statute requires that a chattel mortgage, to be valid as against creditors of the grantor, shall, unless filed forthwith for record, be accompanied by an immediate delivery of the property and change of actual possession, yet such delivery and change of possession is effectual against subsequent attaching creditors if made at any time before their rights accrue. Rev. Stats., art. 3328.

**4. Same—Actual Possession of Range Cattle.**

Cattle subject to a chattel mortgage having been seized under attachment by a range levy, the mortgagee replevied them by delivering a replevy bond to the sheriff and leaving the cattle in charge of parties to look after for him, they being in a range pasture with other cattle he owned. Held, a delivery and change of actual possession within the meaning of the chattel mortgage act. Holloway v. Cabell, 3 Texas Civil Appeals, distinguished.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*J. M. McCormick, H. M. Chapman,* and *P. B. Ward,* for appellant.

*H. P. Brown* and *Ramsey & Odell,* for appellees.

CONNER, CHIEF JUSTICE.—A history of this case appears in the opinion by Justice Stephens on a former appeal. See Brown v. Hudson, 14 Texas Civ. App., 605.

In so far as necessary to the disposition of the present appeal, the following facts were in effect found by the trial court, and which we adopt, to wit:

On December 1, 1885, in due course of trade, appellee, as collateral security for a loan of $2500 made to one Carpenter, acquired an obligation and mortgage of W. T., A. J., and N. S. Hudson for $24,000, said mortgage being upon the XH and HX brand of cattle owned by said Hudsons. This obligation and mortgage of the Hudsons by due sale thereof became the absolute property of appellee.

In the meantime, however, one Andy Walters sued W. T. Hudson and Carpenter in debt and caused the levy of an attachment on the cattle aforesaid, therein procuring judgment with foreclosure of said attachment lien on the 8th day of February, 1888. On May 8th following this Walters judgment, appellee instituted suit against Carpenter and the Hudsons on said $24,000 obligation and declaring also on said mortgage, alleging that said Walters was asserting some kind of interest or lien on the cattle covered by said mortgage, and he prayed for judgment and foreclosure. In this suit appellee caused the cattle upon which Walters had so procured attachment lien to be seized by virtue of a sequestration writ duly sued out and duly replevied the same, thereafter committing the custody and management of said HX and XH cattle under appellee's directions to the Hudsons.

Afterwards, to wit, on March 19, 1891, appellant caused an execution to be duly issued and levied by range levy upon all of said HX and XH cattle, and also upon the NIK cattle hereinafter mentioned, said execution and levy being by virtue of a judgment in his favor duly had for a large sum against the Hudsons. Sale of all said cattle by virtue of said levy of execution was duly made on October 9, 1891, appellant being the purchaser. On April 30, 1894, appellant intervened in said suit instituted by appellee against Carpenter, Walters, and the Hudsons, and asserted title in himself as against all parties.

The result of the trial and of the judgment on said former appeal (in so far as here necessary to state) was, in effect, that Walters' said attachment lien was prior and superior to appellee's mortgage and also to the lien and title so asserted by appellant. Appellee accordingly afterwards paid to Andy Walters the sum in said suit and trial adjudged against him on his replevy bond, which at the date of appellants' levy, March 19, 1891, amounted to the sum of $1913.79, the trial thereafter resolving itself into a contest between appellant and appellee as to the superiority of their respective liens and titles as asserted.

The trial and judgment from which this appeal was taken was by the court, and resulted in appellee's favor. The trial court found that the NIK cattle claimed by appellant by virtue of his said levy and sale had long prior thereto been duly sold to appellee by the Hudsons, the former owners, by reason of which appellant acquired no title thereto by his levy and sale. The testimony supports this finding, and no further notice need be taken of the NIK brand of cattle.

The court also in effect found, contrary to appellant's contention, that the transaction resulting in appellee's acquisition of the Carpenter note and mortgage was, as between the parties, for valuable considera-

tion, and that appellee's ownership thereof and his subsequent assertion of title to the XH and HX cattle, and his control, management, and disposition thereof, through the Hudsons, was not for the purpose of defrauding creditors of the Hudsons as alleged.

The court found that all the XH and HX cattle, including those of the increase thereof that had been branded in the NIK brand by the Hudsons at appellee's suggestion, were not in value more than sufficient to pay off and discharge the Andy Walters debt.

We are of opinion that upon the facts so proven and the facts so found by the court below, and in the absence of a finding of fraud and collusion between Brown and the Hudsons as alleged by appellant, the result of the trial below was the proper one. While it may be true that appellee's mortgage on the XH and HX brand of cattle was not duly registered, yet there seems to be no question but that the mortgage was executed to secure a valid debt of Carpenter to the Hudsons, and in the findings of the court there is no basis for the contention that the assignment thereof to appellee was to hinder, delay, or defraud appellant or any other creditor of the Hudsons.

From the findings and the evidence also, we conclude that this transaction was inherently fair and honest, and that appellee in the effort to protect his interest as he did in the original sequestration suit between appellee and Andy Walters and the Hudsons, was not a mere volunteer and officious meddler, in the sense employed when used in applying the rule that volunteers and meddlers are not entitled to relief. As between the parties to it, the mortgage of the XH and HX cattle was valid and enforceable at the time when appellee sued thereon, notwithstanding its alleged defective acknowledgment and registration. Brewing Assn. v. Mfg. Co., 81 Texas, 99.

Appellant's title, if any, is by levy and sale subsequently made, and he sought to enforce the same by his intervention as against both Walters and appellee. It was finally determined in the suit to which all were parties that the Walters lien and right was prior and superior to both appellant and appellee, and the appellee and the sureties on his sequestration bond were adjudged to pay the Walters judgment, which has been done.

The court finds, and the evidence supports the finding, that the value of all cattle in said brands and of all increase thereof branded in the NIK brand was not equal to the demand of Andy Walters so discharged. During the pendency of the Walters lien appellee would certainly have had the legal right, in the protection of his own interest, to have paid off and discharged such prior lien, and none whose rights had not theretofore accrued could legally complain. If appellee had failed to replevy them, the proceeds of a judicial disposition of the XH and HX cattle and increase would, in the legal course of events, have been applied to the discharge of the Walters debt, in which event there certainly would have been a practical extinction of appellant's claim without recourse, under the circumstances, upon appellee for their value.

We fail to see that appellee's replevy and disposition of the cattle, under the circumstances, injuriously affected appellant.

It may be, as insisted, that appellee's right is not, in a strictly technical sense, that of subrogation, as concluded by the trial court, but we think it would be a harsh construction of our chattel mortgage act to hold that appellee has no escape,—that he can neither be subrogated to the rights of Walters nor require appellant to reimburse appellee to the extent of the valid and prior incumbrance discharged by him, before he will be required to account for the value of the HX and XH cattle.

On this appeal, as upon the former one, the $24,000 mortgage appears to have been treated by all parties as void as to creditors of the maker, W. T. Hudson, on the ground, inferentially, that it was not "forthwith deposited with and filed in the office of the county clerk" of the proper county as required by the Chattel Mortgage Act of 1879 (Revised Statutes, article 3328); but whether this be true in the light of the decision in the case of Oxsheer v. Watt, 91 Texas, 402, rendered since the opinion of this court on the former appeal, we are unable to determine from the present record, it not appearing in what county said mortgage was registered, it appearing only "that the attempted registration of the mortgage was in a county other than the county of the residence of the maker at the time made." But treating it as the parties have, as void as to creditors of W. T. Hudson for want of proper registration, it then remains to be determined what effect, if any, as against appellant Randolph, shall be given it, in view of the sequestration proceedings of appellee and appellee's possession thereunder as shown in the record.

By reference to the act in question, now article 3328 of the Revised Statutes, it will be noted that an unregistered mortgage is not by the terms of the statute made void as to all parties. It is made void as to "creditors" of the maker only when not "forthwith deposited with and filed in the office of the county clerk" of the proper county, and when not "accompanied by an immediate delivery and followed by an actual and continued change of possession of the property mortgaged as pledged by such instrument," thus presenting two coexisting elements that must be shown before the "creditor" has the right to have the instrument declared void.

It was held by this court in Vickers v. Carnahan, 4 Texas Civil Appeals, 305, in effect, that the filing "forthwith" was sufficient if done at any time before the right of another accrued. By parity of reason we are of opinion that if at any time before the asserted right of another accrues there be a "delivery * * * followed by an actual and continued change of possession of the property mortgaged," it will have effect to defeat such subsequently acquired claim.

As we have seen, at and prior to appellant's levy, appellee, in the suit against Walters and others, had duly sequestered the cattle attached by Walters, and Walters failing to do so, appellee duly replevied the

same.   On the trial appellee Brown, among other things, testified, in substance, "that he went up there [to the county of the location of the cattle] and delivered this bond [the replevy bond] to the sheriff, J. M. Allen.   He accepted the bond and turned the cattle over to me, range delivery.   Didn't have any cattle in sight.   *   *   *   They were in Carter's pasture, and I went up there and left them in possession of them [Webb and Carter] for me.   Really W. T. Hudson was managing the business, but this man Webb was running the cattle   *   *   *   while in Carter's pasture, and I went out there more strictly to them and informed him, still as I would understand they were to remain under the direction of me and whatever instruction I might give them.   I left them there with N. S. Hudson.   He was in charge of them.   *   *   *   The two brands were together, the NIK and the HX cattle.   *   *   *   I saw the two herds were together, kept together, the NIK cattle, which I had bought and had bill of sale to, and the HX cattle that I replevied.   *   *   *   Then I came back home.   *   *   *   They, the XH and NIK cattle, were running together, and I had them treated in the same way as far as I know.   I was treating them as though they were my own."

As to what shall constitute a delivery and actual and continued change of possession must necessarily depend on the character and situation of the property in question.   Levies and sales of cattle as they run on the range have long been upheld, and in our State have express statutory sanction.   In the interest of all concerned, it often becomes impracticable to take into manual possession each head of stock levied upon and sold, and in this case the officer executing the writ of sequestration thereby took such possession and dominion over them as gave him right of absolute control, and upon the presentation and approval of appellee's replevy bond such possession and dominion was surrendered to appellee, and the evidence shows that thereafter they were actually cared for, managed, controlled, sold, and disposed of in all respects as were the NIK cattle owned by appellee.   The fact that this was done by and through W. T. Hudson was but presumptive evidence of fraud, against which, as we have seen, the trial court found.   As perhaps somewhat analogous in the facts relating to possession, see the case of Davis v. National Bank, 7 Texas Civil Appeals, 41.

On the whole, we are of opinion that such delivery, followed by such actual and continued change of possession of the XH and HX cattle, has been shown as to constitute appellee's mortgage valid as against appellant's subsequent levy and sale, and that in view of the findings as to their number and value, and in the absence of allegation and proof on appellant's part that he was a lienholder and purchaser in good faith, as those terms are used in the statute, appellant has suffered no injury.

It may be suggested that the views herein expressed are in conflict with our former opinion, but an examination of the opinion will show that the question now before us was not then made or discussed.   The nature of a voluntary pledge of cattle on the range and the effect of the statute quoted thereon were then considered and discussed, but it will

be remembered that a change of title and possession effected by judicial proceedings has been distinguished from such voluntary transfer. Holloway v. Cabell, 3 Texas Civ. App., 320.

We do not deem the rules relating to confusion of goods so strongly urged in appellant's brief as applicable, in view of the court's finding against fraud and of the testimony showing the specific number of increase of the XH and HX cattle branded in the NIK brand, and of appellee's explanation, evidently credited by the trial court.

We have examined other assignments not involved in what has been said, but find no reversible error therein, and the judgment below is accordingly in all things affirmed.

*Affirmed.*

HUNTER, Associate Justice, did not sit in this case.

Writ of error refused.