First National Bank of Portales, New Mexico, et al., v. John T. McElroy.

Decided June 11, 1908.

**1.—Chattel Mortgage—Registration—Unorganized County.**

Article 4641, Revised Statutes, providing for the registration of contracts relating to real estate in unorganized counties in the counties to which they are attached for judicial purposes, does not apply to chattel mortgages nor regulate their registration.

**2.—Same—Attachment for Judicial Purposes.**

An Act of the Legislature attaching an unorganized county to an organized one for judicial purposes does not cover the matter of record of title in such unorganized county.

**3.—Same—Terry County.**

The Act of August 21, 1876 (Laws, 15th Leg., sec. 6, p. 242), attaching the unorganized county of Terry, thereby created, to Young County "for judicial, surveying and all other purposes," authorized, as one of the purposes of such attachment, instruments relating to property in Terry County, including chattel mortgages, to be registered in Young County; and it was not repealed by subsequent legislation attaching Terry, for other purposes, to other organized counties and repealing all laws in conflict, such as the Acts of 1889, 1891, 1897 and 1901, attaching Terry to Martin County for judicial purposes. The registration in Martin County of a chattel mortgage on property situated in and executed by a resident of Terry County was unauthorized by law, and was not constructive notice thereof to a subsequent mortgagee.

**4.—Chattel Mortgage—Change of Possession.**

Where a chattel mortgage is accompanied by change of possession of the property, a subsequent mortgagee whose instrument was registered while possession was so held by the first took subject to his rights, though the first mortgage was not registered as required by law.

Appeal from the District Court of Midland County. Tried below before Hon. Jas. L. Shepherd.

*S. J. Isaacs,* for First National Bank of Portales and National Bank of Midland. *Douthit & Littler,* for First National Bank of Lubbock.

*Harry M. Reed* and *Royall G. Smith,* for City National Bank of Colorado.—Where an unorganized county was originally attached to an organized county for "judicial, surveying and all other purposes," the registration of a chattel mortgage on personal property situate in such unorganized county in the office of the county clerk of a county to which it had been subsequently attached for judicial purposes only, was not constructive notice to subsequent mortgagees and purchasers.

On status of Terry County: Chapter 144, p. 236, section 6, Acts of Fifteenth Legislature, Aug. 21, 1876, creating Terry County, and attaching it for judicial, surveying and all other purposes to Young County; chapter 18, p. 12, Acts of Seventeenth Legislature, February 25, 1881, attaching the unorganized County of Terry to Throckmorton County for judicial purposes; chapter 67, p. 63, Acts of Eighteenth Legislature, and also chapter 41, p. 29, same, April 9, 1883, attaching the unorganized County of Terry to Howard County for judicial purposes; chapter 52, p. 40, Acts of Eighteenth Legislature (1883), creating the Howard Land District, and making the unorganized County of Terry a part thereof for surveying purposes; chapter 98, p. 80, Acts of Twentieth Legislature, March 31, 1887, attaching the unorganized County of Terry to Howard County for judicial purposes; chapter 138, p. 162, Acts of Twenty-first Legislature, February 18, 1889, attaching the unorganized County of Terry to Martin County for judicial purposes; chapter 34, p. 36, Acts Twenty-second Legislature, March 15, 1891, attaching the unorganized County of Terry to Martin County for judicial purposes; chapter 110, p. 166, Acts of Twenty-fifth Legislature, May 11, 1893, attaching the unorganized County of Terry to Martin County for judicial purposes; chapter 71, Acts of Twenty-fifth Legislature (1897), attaching the unorganized County of Terry to Martin County for judicial purposes; chapter 39, Acts Twenty-seventh Legislature, attaching the unorganized County of Terry to Martin County for judicial and surveying purposes; chapter 67, section 3, Acts of Twenty-eighth Legislature (1903), attaching the unorganized County of Terry to Martin County for judicial and surveying purposes. On registration: Baker v. Beck, 12 S. W., 229; Alford v. Jones, 9 S. W., 470; Rev. Stats., art. 783.

Registration of chattel mortgages is not a judicial act, nor is it included within the expression "judical purposes." Baker v. Beck, 74 Texas, 562; Alford v. Jones, 71 Texas, 519.

As against subsequent mortgagees and purchasers of property situated in an unorganized county, a chattel mortgage made prior to the organization of said county, and registered in the county to which same had been formerly attached for judicial purposes, but which had never been delivered to the newly organized county, is not constructive notice. Rev. Stats., arts. 787, 3328.

In the absence of any statute requiring or permitting the registration of a chattel mortgage on personal property in an unorganized county in the county to which it is attached for judicial purposes, and of a statute directing where same shall be registered, such instrument should be registered in the county of which said newly organized county was formerly a part in order to be constructive notice. Baker v. Beck, 74 Texas, 562; Alford v. Jones, 71 Texas, 519.

Registration of an instrument not required or affirmatively permitted to be recorded does not constitute constructive notice. Burnham v. Chandler, 15 Texas, 441; Wright v. Lancaster, 58 Texas, 250; Pegram v. Owen, 64 Texas, 475.

*Camp & Caldwell,* for appellee.—There being no specific statute directing where chattel mortgages upon property located in unorganized counties shall be filed for registration, then article 3328, Sayles' Revised Statutes, governs, and the unorganized county is considered a part of the county to which it is attached for the purposes of registration, and, as the trial court found that, at the date of appellee's mortgages, and ever since, the mortgagor Conley resided in said Terry County, and the mortgaged property was also located in said county, the filing of appellee's mortgages in Martin County was legal and constructive notice to the world. Rev. Stats., arts. 4639, 3328; Groom v. State, 23 Texas Crim. App., 82; Vickers v. Carnohan, 23 S. W., 340; Oxshur v. Watt, 91 Texas, 405.

Should the registration of appellee's mortgages in Martin County be held invalid, and not constitute constructive notice, then appellee had taken actual possession of the mortgaged property at the instance of the mortgagor on July 28, 1905, prior to the filing of any of the mortgages held by appellants except the Lubbock Bank; appellee became thereby a pledgee, and entitled to a foreclosure of his mortgages; and, as he plead in the alternative, if he could not recover by virtue of the registration of his liens, that he recover as of a pledge, the judgment should only be reformed so as to give the Bank of Lubbock priority as against appellee. Hudson v. Wilkinson, 61 Texas, 606; Jones on Chattel Mortgages, section 178; Lucket v. Townsend, 3 Texas, 129-131; Randolph v. Brown, 53 S. W., 825.

LEVY, Associate Justice.—By his petition the appellee sought a judgment against R. Conley on certain notes executed to him by Conley, with a foreclosure of two chattel mortgages given upon certain cattle to secure the notes. A recovery in the petition was sought against the appellant Reed for conversion of some of the cattle, on the allegation that he purchased some of the cattle having notice of appellee's lien. The petition further alleged that on or about July 27, 1905, Conley delivered to the appellee the possession of all of said cattle, to be held by appellee under and by virtue of his chattel mortgage, and which actual possession he has held, open and notorious, in the county where the cattle were situated. All the other appellants were made parties to the suit, and it was alleged in the petition that they were subsequent mortgagees, having at the time constructive notice of appellee's lien on the cattle. The appellant Reed answered by a general denial, and specially, that the purchase by him of some of the cattle for the sum of $504 was without notice, actual or constructive, of appellee's liens; and further answered that the said sum of $504 was applied to part payment of a lien of the First National Bank of Lubbock on said cattle to secure the repayment to it of money advanced by the said bank to Conley for the purchase of these very cattle. The appellants, the City National Bank of Colorado, Texas, the First National Bank of Portales,

New Mexico, the First National Bank of Lubbock, and the Midland National Bank, of Midland, Texas, each plead respectively existing liens upon said cattle taken at the time, without notice, either actual or constructive, of the alleged liens held by the appellee, and each prayed that its said lien be declared superior to those of appellee.

A trial was had before the court without a jury, and judgment was rendered by the court in favor of the appellee, decreeing a foreclosure in his favor of his said liens upon said cattle, and adjudging the liens of all the other appellant banks to be junior and inferior liens by reason of constructive notice of the liens of appellee, and adjudging a personal judgment for $315 in favor of the appellee against the appellant Harry M. Reed. All of the defendants in the suit, except R. Conley, have appealed to this court from the judgment so rendered. The trial court filed his findings of fact and conclusions of law, and the same are in the record with no complaint by appellants as to the same. There is no statement of facts in the record except these findings. The findings of the court are adopted by this court.

The first assignment of error assails the first paragraph of the court's conclusions of law. Looking to the court's findings of fact, as involved in the first assignment of error, it was established in the case that, on October 21, 1902, Conley executed to the appellee a chattel mortgage on certain cattle, and that on August 21, 1902, Conley executed to Robinson a chattel mortgage on certain cattle (which mortgage the appellee acquired by transfer), and that both of these chattel mortgages were filed with and registered by the county clerk of Martin County, Texas, "in the chattel mortgage register for Terry County," kept by him in Martin County, on October 22, 1902, and August 21, 1902, respectively; that at the time of the execution and registration of the chattel mortgages Terry County was an unorganized county attached to Martin County for judicial purposes; that the mortgagor Conley resided, and the mortgaged cattle were situate, in Terry County; that appellant Reed was a subsequent purchaser of some of the mortgaged cattle from Conley, and that all the other appellants were subsequent mortgagees of the said cattle mortgaged to the appellee; that Terry County became legally organized as a county government under the statute providing for such organization on June 28, 1904; that this suit was instituted August 4, 1905. The court entered the conclusion of law that the depositing and registering of appellee's chattel mortgages in Martin County was constructive notice to all the appellants, and that their interest in the cattle was subordinate to and subject to the appellee's prior mortgage claim. It is contended by the appellants, in effect, that the court erred in this conclusion of law, because the unorganized county of Terry was attached to Martin County by legislative acts for the definite and specified purpose of "judicial purposes" only, and the mortgaged cattle were situate in, and the mortgagor resided in, Terry County, and that therefore the registration of the appellee's mortgages on the personal property in Martin County, being neither permitted nor required by law, would not constitute legal or constructive notice to the appellants of the appellee's lien on the cattle.

It is provided by article 3328, Revised Statutes, that all chattel mortgages or liens upon personal property which shall not be accompanied by

an immediate delivery, and be followed by actual and continued change of possession of the property mortgaged or pledged by such instruments, shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instruments, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated; or if the mortgagor, or person taking the same, be a resident of this State, then of the county of which he shall at the time be a. resident. The cases have so applied this statute that, in the absence of actual transfer of possession, a chattel mortgage must be registered as required by law in order to be valid against subsequent purchasers, creditors and lienholders in good faith. Brothers v. Mundell, M. & Co., 60 Texas, 240; Lewis v. Bell, 40 S. W., 747; Smelser v. Baker, 6 Texas Civ. App., 751. But the registration of the chattel mortgages in Terry County, where the property was situated at the time, could not be accomplished under this statute, because at that time Terry County was unorganized for the purposes of county government of its own, and it was without means of doing things necessary to protect public or private interests within its borders. The effect of article 789, Revised Statutes, is to prescribe that until the county becomes legally organized for purposes of its own county government it shall not be considered a subdivision of the State during the time, capable of performing legal and political functions. However, it is within the power of the Legislature to make provision for registration of deeds and mortgages relative to real and personal property situated in unorganized counties, and to designate the proper place for registration of such instruments. Whether the Legislature has made such designation for Terry County is the question in hand. The authority for registration of chattel mortgages on personal property situated in Terry County then must be sought from some specific provision of law. There does not appear any express general provision of law for the registration of mortgages on personal property situated in unorganized counties which have never been legally organized for county government. There is a provision, however, found in article 784, Revised Statutes, applicable to counties that have once been legally organized and that have thereafter lost their county organization. By article 4641, Revised Statutes, it is provided that all deeds, conveyances and mortgages, or deeds of trust, or written contracts relating to real estate situated in an unorganized county, shall be recorded in the county to which such unorganized county is attached for judicial purposes. But this article mentioned could not be held to include chattel mortgages on personalty, because by its very terms it is limited to and applicable only to instruments conveying or affecting an interest in real estate. Referring, though, to the several Acts of the Legislature relating and pertaining to Terry County, some provision may be found designating the place for registration. Terry County was established and its boundaries defined by the Acts of 1876, p. 236. By the same Act, in section 6, it was attached to the parent county, Young, "for judicial, surveying and all other purposes." By the Act of 1881, p. 12, in creating the thirty-fourth judicial district, Terry County was attached to Throckmorton County "for judicial purposes." By the Act

of 1883, p. 67, in rearranging the judicial districts of Texas and fixing times for holding courts therein, Terry County was attached to Howard County "for judicial purposes;" and by the same Act, p. 40, it was made a part of the Howard Land District for surveying purposes. By Acts of 1887, p. 80, in reorganizing judicial districts, Terry County was attached to Howard County "for judicial purposes." By Acts of 1889, p. 162, in reorganizing judicial districts, Terry County was attached to Martin County "for judicial purposes." By the Acts of 1891, p. 36, in creating a new judicial district, Terry County was continued to be attached to Martin County "for judicial purposes;" and so by the Acts of 1893, p. 166, and by Acts of 1897, p. 85, when changing terms of court in the thirty-second judicial district. By the Acts of 1901, p. 54, and Acts of 1903, p. 92, in rearranging the terms of the court in the judicial district, Terry County was attached to Howard County "for judicial and surveying purposes." This legislative history of the status of Terry County shows that at the time of its being created as a county, and its boundaries fixed, and before it was organized for its own county government, it was annexed to Young County "for judicial, surveying and all other purposes," and that subsequently it was detached from Young County and attached to the several other counties specifically "for judicial and surveying purposes." By reference to these several amendatory Acts it is seen that the detachment was in connection with the creation of judicial districts, and in the one instance to the creation of a land district for surveying purposes. These several Acts in each instance have the repealing clause, "All laws and parts of laws in conflict with this Act are hereby repealed." A fair construction of the Act creating Terry County and annexing it to Young County in the first instance would be that the Legislature intended to attach or annex it to Young County for all purposes generally of county government. The original Act uses the broad language, "for judicial, surveying and all other purposes." Under the power of "judicial purposes" the grand jury of Young County would have jurisdiction to indict, and its courts to try and punish for crime committed within the borders of Terry County. All requirements of law as to surveying public lands situated within its territory could be performed by the proper officers of Young County, under the authority of "surveying purposes." The full extent of such jurisdiction and control can be correctly measured under the phrase "all other purposes" only by resort to all the various laws relative to county officers and their duties. It is therefore manifest that the Legislature intended the attachment of Terry to Young County to become complete, and for its territory, to all intents, to be made practically a part of Young County, and to grant authority to the county officers of Young County to exercise control and jurisdiction over the unorganized county of Terry the same as if it were a part of their own county of Young. To annex to Young County for "all other purposes," besides judicial and surveying purposes, had the effect to confer and grant exclusive jurisdiction to Young County generally and without particular enumeration. So, through the language of the Act, there is gathered the intention of the Legislature, in the first instance, to attach the unorganized county of Terry to Young County for all legal purposes gen-

erally, in order to provide the means of doing those things necessary to protect public and private interests within its borders. It would follow, as a fair and proper construction of the Act and its purposes to include within the provision "all other purposes" the registration in Young County of instruments in writing relating to real and personal property situated in Terry County required by terms of law to be recorded, and the authority of the county clerk of Young County to make such records. The next question presented is: Has this Act, so far as registration is concerned, been repealed by the subsequent amendatory Acts? In the subsequent amendatory Acts there is nothing in the language to indicate that the Legislature intended to change the original status of the county further than to rearrange and otherwise attach it to a different county for "judicial and surveying purposes." The amendatory Acts in each instance specified the purposes of the attachment, and provided for the repeal of laws "in conflict with the Act." "All other purposes," except judicial and surveying, would seem not to be repealed because not in conflict with the specified purposes. These specified purposes of "judicial" and "surveying," under the general rule of construction, would exclude "all other purposes," and leave and continue the original Act in force and effect "for all other purposes" than those included in the topics specified. It is within the power of the Legislature to attach an unorganized county to several organized counties, each for the different purposes as exigency or convenience might suggest. We do not think that the registration of a chattel mortgage would be within the meaning of "judicial purposes," as used and meant in the Acts. The duties of a recording officer are ministerial. Brockenborough v. Melton, 55 Texas, 493. "Judicial purposes" is defined in volume 23 "Cyc." as "purposes of the court in administration of justice." The case of Board of Commissioners v. Northern Pac. Ry., 25 Pac., 1058, was where Bighorn County was attached to Gallatin County "for legislative and judicial purposes," and in construing the expression "judicial purposes" the court says: "We can not doubt, in view of the meaning of the word 'judicial,' that the expression 'judicial purposes,' as used in the statute, means purposes of the courts in administration of justice." The language of the amendatory Act, in the light of the wording of the repealing clause, would not warrant the ruling that the "all other purposes" of the original Act was repealed expressly or by implication. See case of Alford v. Jones, 71 Texas, 519. A contention of appellee is that Conley, the mortgagor, though residing in Terry County, was legally qualified for jury service in Martin County, and that, by reason thereof, that would constitute him a resident of Martin County, and that, consequently, the mortgage was properly registered in Martin County. This contention could not obtain nor apply to the registration laws. Conley was qualified for jury service in Martin County because jury service is a part of, and necessarily incident to, judicial purposes. This ruling involves the decision that the trial court erred in its first conclusion of law that the depositing and registering of the chattel mortgage of the appellee in Martin County was constructive notice to the appellants.

The appellants' second assignment of error is to the effect that the court erred in ordering a decree of foreclosure of the appellee's mort-

gage liens in priority to the appellants' liens and claims. Looking further to the court's findings it was established that on July 28, 1905, R. Conley, the mortgagor, at the ranch of the appellee in Terry and Yoakum Counties, delivered actual possession of all the cattle in controversy to appellee, to be by him held under and by virtue of and for the purpose of his chattel mortgage, and that appellee, for the purpose of being a mortgagee in possession, took actual possession of the cattle at once, and placed same in a separate and distinct pasture from that in which they were being pastured by the mortgagor, and has continuously ever since held the actual possession of the cattle under and by virtue of his mortgage. It was further found by the trial court that on the 26th day of May, 1905, the appellant Reed purchased from Conley twenty-one head of the said cattle, of the value of $15 per head, without actual notice of any mortgage of the appellee upon the same. It was further found that on the 20th day of December, 1904, and on the 5th day of January, 1905, after the organization of Terry County on June 28, 1904, the First National Bank of Lubbock filed and deposited with the county clerk of Terry County its several chattel mortgages executed by Conley on the said cattle, and that each chattel mortgage was on the several days of deposit duly registered; that the chattel mortgages executed by Conley to the several appellants in this case were filed in Terry County on September 6, 1905. From these facts, as found by the trial court, we are of the opinion that the appellants' contention should in part be sustained. The appellee in his petition plead in the alternative that, if it should be held that the registration of his mortgages was not legal, that he be allowed to recover in priority in this case to the other appellants, because he was a mortgagee in actual possession of the cattle, setting out the facts in the petition of delivery by the mortgagor and his actual possession and change of possession of the cattle under the mortgage. The findings of the trial court in this respect are not challenged. The trial being before the court below without a jury, and the court having found as to the facts, and his conclusion of law as to the validity of the registration being erroneous, it becomes the duty of this court to render such judgment as the trial court should have rendered under the law. These findings by the trial court show, and are sufficient to show, appellee to have been in actual and continued change of possession of the mortgaged cattle, holding same under and by virtue of his chattel mortgages from the date of July 28, 1905, and that his rights as a mortgagee in possession from that date became fixed, and were sufficient notice under the law. Jones on Chattel Mortgages, section 178; Lucketts v. Townsend, 3 Texas, 129 to 131; Randolph v. Brown, 53 S. W., 825. That appellee would be entitled to recover in priority of the claims of the appellants The City National Bank of Colorado, The First National Bank of Portales and The Midland National Bank, of Midland, because each of the mortgages held by these appellants were legally subsequent and not prior to appellee's liens. But the appellant Harry M. Reed was a purchaser without notice, and prior to the time the appellee became a mortgagee in possession, and would be entitled to a judgment as against the appellee; and the First National Bank of Lubbock, having legally placed its mortgage of record in Terry County after its organization as a county and prior to the time the ap-

pellee became a mortgagee in possession, would be entitled to recover in priority to the appellee and all the other appellants except Reed. The judgment of the District Court is therefore in part reversed, and here rendered that the mortgage liens of the First National Bank of Lubbock, Texas, be and are hereby decreed to be prior to and superior to the liens of the appellee, and that appellee have a foreclosure of his liens subject to the prior liens of the First National Bank of Lubbock, and that the appellee recover nothing of the appellant Harry M. Reed, and that he go hence, and that the appellants The First National Bank of Lubbock and Harry M. Reed recover of the appellee all their costs of both the District Court and this court, and that otherwise the judgment of the trial court in all things remain in force undisturbed and affirmed. The judgment as to each of the other appellants is affirmed. The appellants The City National Bank of Colorado, The Midland National Bank of Midland, and The First National Bank of Portales, will pay three-fifths, and appellee two-fifths, of all costs of this appeal.

*Reversed and rendered in part and affirmed in part.*