BEST v. FARMERS' & MERCHANTS' BANK.

(Court of Civil Appeals of Texas. Amarillo. Nov. 25, 1911.)[1]

1. CHATTEL MORTGAGES (§ 225*)—REMOVAL OF PROPERTY—NEGLIGENCE OF MORTGAGEES.

A mortgage of horses gave the mortgagee the right to take possession at any time it felt

[1] Filed in the Court of Civil Appeals for the Second District at Ft. Worth February 20, 1911, and transferred to this court by order of the Supreme Court July 1, 1911.

its security insufficient or the property was moved out of Oklahoma. The owner, with the knowledge of the mortgagee's agent, moved the horses to Texas and there held them for some time before selling them to a third person. Held, that the mortgagee was guilty of negligence in not obtaining possession of the property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 470; Dec. Dig. § 225.*]

2. CHATTEL MORTGAGES (§ 82*) — CONSTRUCTIVE NOTICE—FOREIGN LAWS.

While foreign contracts and mortgages, if valid when made, will be enforced between the original parties thereto according to the laws of the place where made, the constructive notice obtained by registering a chattel mortgage in a foreign state depends wholly upon the statutes of that state, which can have no extraterritorial effect.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 151; Dec. Dig. § 82.*]

3. CHATTEL MORTGAGES (§ 82*)—RECORDING—CONFLICT OF LAWS.

A lien acquired by the registration of a chattel mortgage in a foreign state will not be given priority in Texas; the constructive notice imparted as a result of the registration depending wholly upon a foreign law, which will not be enforced in the domestic forum.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 82.*]

4. CHATTEL MORTGAGES (§ 89*)—RECORDING—REMOVAL OF PROPERTY — INNOCENT PURCHASERS.

Where chattels, which were mortgaged in a foreign state, the mortgage being recorded there, were brought into Texas with the knowledge of the mortgagee, who did not register his mortgage there, an innocent purchaser for value will take priority over the lien of the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 166; Dec. Dig. § 89.*]

Appeal from Lipscomb County Court; P. B. Mills, Judge.

Action by the Farmers' & Merchants' Bank against Daniel Best. There was a judgment for defendant in the Justice Court, from which plaintiff appealed to the County Court. From a judgment there rendered for plaintiff, defendant appeals. Reversed and rendered.

E. C. Gray, for appellant. Adkins & Sewell and W. H. Springfield, for appellee.

GRAHAM, C. J. This cause originated in justice court, precinct No. 4, Lipscomb county, Tex., and from a judgment rendered in favor of appellant in that court on September 12, 1910, appellee appealed to the county court, wherein the cause was tried before the court without the intervention of a jury on November 23, 1910, and resulted in a judgment in favor of appellee and against appellant for the sum of $103.52 and all costs, from which latter judgment appellant appealed to the Court of Civil Appeals for Second District, and on proper order of our Supreme Court the cause is now pending in this court.

The trial court, having been requested

so to do, filed his findings of facts and conclusions of law as follows:

"Findings of fact in the trial of the above entitled and numbered cause:

"(1) I find that on the 18th day of February, 1909, E. G. McNeely did execute and deliver to A. L. Johnson one promissory note for the principal sum of $71.00, due ten months after date, bearing interest at the rate of 10 per cent. per annum, and that said note was assigned by the said Johnson to one C. E. Owens, and by the said Owens the note was assigned to the Farmers' & Merchants' Bank, a banking corporation of Arnett, Okl., Ellis county, of said state, for a valuable consideration, without notice and before maturity. I further find that at the same time that the said E. G. McNeely executed and delivered said note as aforesaid, and as a part of the transaction, he, to secure the payment of said note, executed and delivered to the said Johnson a chattel mortgage on the following described personal property, to wit, one bay horse, five years old, weight 1,100 pounds, and one brown horse, six years old, weight 1,100 pounds; the same being at the time of the execution of said mortgage the property of the said E. G. McNeely, and located on the farm of the said E. G. McNeely, in Little Robe township, in the county of Ellis and the state of Oklahoma.

"(2) I find that the aforesaid mortgage was on the 20th day of February, 1909, filed in the office of the register of deeds of said Ellis county, Okl., at 2 o'clock p. m.

"(3) I find that the aforesaid mortgage contains a recitation of $20 as attorney's fees if foreclosed, and that said plaintiff had obligated to pay its attorneys of record more than this amount for this suit, and that the $20 is in all respects reasonable, and that the recitation in said mortgage also provides the said $20 for the recovery of the property.

"(4) I find that the note above described was, at the time of this suit and at all times prior thereto from the time of the assignment of the note to the plaintiff, as aforesaid, the property of plaintiff; that no part of said note, either principal or interest, had been paid. I further find that this note in connection with another note was extended, said extension being evidenced by a new note which has for its principal sum the amount of this note, both principal and interest and the same of the other note which was likewise extended, and that this note was marked collateral and attached to the new note, which note is also past due, and no part of said note, either principal or interest, has been paid.

"(5) I find that the said E. G. McNeely did bring into the state of Texas and sell, without the knowledge or consent of the plaintiff or any of its agents, the horses described in the mortgage from the said E. G. McNeely to the said Johnson, and the said horses were sold to Daniel Best, the defendant, in Higgins, Lipscomb county, Tex., and that the sale was made after the assignment of the said note to plaintiff, and that the said sale was made March 3, 1910.

"(6) I find that the horses that were mortgaged by the said E. G. McNeely and described in said mortgage as follows: One (1) bay horse five years, weight 1,100 pounds; one brown horse, 6 years, weight 1,100 pounds, owned entirely by and now in the possession of said E. G. McNeely, on his farm in Little Robe township, Ellis county, state of Oklahoma—are the horses sold by the said McNeely to the said Best as aforesaid.

"(7) I find that the said Best paid valuable consideration for the said horses that he purchased from the said E. G. McNeely, and that he did not have actual knowledge of the existence of said mortgage at the time he made the purchase.

"(8) I find that the plaintiff bank in failing to ascertain, prior to the time that Best made the purchase of said horses, that E. G. McNeely had brought the horses into Lipscomb county, Tex., was not guilty of negligence.

"(9) I find that at the time that the said plaintiff learned that the said E. G. McNeely had brought the said horses into Lipscomb county, Tex., and sold same to Daniel Best, plaintiff through its agents immediately demanded of the said Best the delivery of the said horses or the payment of said note, and that the said Best refused to do either.

"(10) I find that the said Daniel Best used no sort of diligence to ascertain if said horses were incumbered, and by the use of proper diligence he would have discovered this mortgage.

"(11) I find that the said E. G. McNeely had no authority whatever to sell to the said Best or any other party the said horses, and that the extent of his authority was that, should he find a prospective purchaser, he should take the said purchaser to plaintiff bank, and the negotiations of sale and purchase, if any, should be entered into between the said prospective purchaser and plaintiff bank.

"Conclusions of law by the court in the above entitled and numbered cause:

"From the findings of facts herein filed in this cause, I conclude that the law of this case entitles the plaintiff to recover of and from the defendant the sum of $71, together with interest thereon from the 18th day of February, 1909, at the rate of 10 per cent. per annum and an attorney's fee of $20 and all costs in this behalf expended."

Appellant, in his assignments of error, properly briefed, attacks most of said findings of fact as not being supported by the evidence. He also attacks the conclusions of law on many grounds; among others be-

ing that there is no finding as to the value of the property alleged to have been converted. From an inspection of the statement of facts, on file in this case, we are inclined to the opinion that in several instances the trial court's findings of fact are not supported by the evidence in the particulars complained of by appellant; but, under the view we take of the case, it becomes unnecessary to pass on any of said assignments, except as hereinafter indicated.

[1] By one assignment, appellant attacks the sufficiency of the evidence to support the trial court's eighth finding of fact, and we think this must be sustained for the reason that McNeely, having moved from Ellis county, Okl., to Lipscomb county, Tex., in December, 1909, at that time bringing the horses with him, and there remained with the horses until after the sale of them to appellant, and the proof further showing that in January or February, 1910, appellee, through its authorized agent, saw the horses in Lipscomb county, Tex., in McNeely's possession, where he was then living, and appellee's mortgage on its face showing that the right was therein given to take possession of the property at any time it felt its security insufficient, or in the event the property was moved out of Ellis county, Oklahoma.

[2] Another of appellant's assignments attacks the sufficiency of the evidence to sustain the trial court's tenth finding of fact, for the reasons just given, coupled with the further fact that the evidence fails to show that said mortgage had ever been filed for record in any county in Texas, while it does show that McNeely informed appellant when he purchased the horses that they were unincumbered. We think this finding of the trial court shows that he applied the doctrine of constructive notice flowing from the fact that the mortgage had been filed for record in Oklahoma, and for reasons hereinafter given we think this incorrect.

Under other assignments, appellant contends that the conclusions of law and the judgment are not supported by the court's findings of fact nor the testimony introduced on the trial, mentioning especially the fact that no finding of fact is made as to the value of the horses alleged to have been converted at the time and place of their alleged conversion.

As we view the record in its entirety, unless appellant is chargeable with constructive notice of the filing of the mortgage in Ellis county, Okl., no such allegations or proof were made on the trial below as would sustain a recovery by appellee against appellant.

While foreign contracts and mortgages, if valid where made, will be by the courts of this state expounded and enforced in this state, as between the original parties thereto, according to the laws of the state where made, we do not think the statutory provisions of one state as to notice flowing from its registration laws can properly be held to have any extraterritorial effect.

In discussing a similar question, in the case of Crosby v. Huston, 1 Tex. 204, at page 238, Chief Justice Hemphill, speaking for the Supreme Court of this state, says: "But, whatever may have been the effect of registration in Mississippi, it cannot be extended beyond the territorial limits of the state. The operation of such municipal regulation is local and cannot affect property in a foreign jurisdiction."

In Snyder v. Yates et al., 112 Tenn. 309, 79 S. W. 796, 64 L. R. A. 353, 105 Am. St. Rep. 941, Justice Williams, speaking for the Supreme Court of Tennessee on a similar issue, uses this language: "The statute laws of a state have of themselves no extraterritorial force, and, whatever effect they have in foreign states, they have by virtue of the laws of such state or under the doctrine of comity of states."

Justice Long, in the case of Corbett v. Littlefield, 84 Mich. 30, 47 N. W. 581, 11 L. R. A. 95, 22 Am. St. Rep. 681, speaking for the Supreme Court of Michigan, says: "It may be true that this mortgage lien was valid in Nebraska, and might have been enforced there as against creditors, or even purchasers in good faith. It is the duty of courts to extend the principles of comity to our sister states, and to recognize generally the existence of liens under foreign statutes. But we are asked to give this mortgage priority of lien over the attachment levies. The recognition of the existence and validity of such liens by the foreign state is not to be confounded, however, with the giving them a superiority or priority over all other liens and rights justly acquired in this state merely because the former liens in the state where they first attached have there, by force of their statute, a superiority or priority."

On a similar question, in the case of Donald v. Hewitt, 33 Ala. 534, 73 Am. Dec. 431, Justice Walker for the Supreme Court of Alabama says: "The preference given by the Kentucky statute cannot operate to defeat liens acquired by virtue of attachments and libels in this state before it was set up. The priority of liens given by the Kentucky statute is not a matter of contract. It is intrinsic and is rather a matter of personal privilege given by lex loci contractus. * * * The just comity which is recognized in the law requires that a contract should be expounded and its obligations ascertained according to the law of the country where it is made. But this principle does not extend to a recognition of liens given by the foreign law when it would operate prejudicially to the rights of others in the country where such lien is asserted. The liens given by the statute in one country upon movables have no superiority to liens subsequently acquired in another country to which those movables are carried."

To the same effect speaks the Supreme Court of the United States, in the case of Harrison v. Sterry, 5 Cranch, 298, 3 L. Ed. 104.

[3] Having reached the conclusion that the priority to which the lien in controversy would be entitled if the alleged conversion had occurred in Oklahoma, as a result of the constructive notice imparted in that state as a result of its registration law, the alleged conversion having occurred in this state, it only remains to decide the duty of the courts of this state, arising from the law of comity between states, as applied to this case, and we take it is not the duty of the courts of this state to extend to a citizen of another state a right or privilege that would not be extended to one of our own citizens in a matter of this kind.

[4] In enforcing the mortgage in controversy in this state, we think, in the absence of actual notice by appellant, the mortgage should be treated as if executed and delivered in this state as of the date the property and its owner and possessor, McNeely, came into the state with it; and, if this be correct, it is clear, from the holdings of our courts in controversies among our own citizens, that the mortgage is absolutely void under the facts in this case as to appellant, whom the record shows was an innocent purchaser for value and without actual notice of the mortgage. See Hackney v. Schow et al., 21 Tex. Civ. App. 613, 53 S. W. 713; McCarthy v. North Texas Land Company, 101 S. W. 835; and First National Bank of Portales, N. M., et al. v. McElroy, 51 Tex. Civ. App. 284, 112 S. W. 801.

Because the alleged chattel mortgage of appellee on the property purchased by appellant was absolutely void as to appellant under the facts in this case, and appellee shows no right of recovery except through and by virtue of said mortgage, the trial court erred in rendering judgment for any sum in favor of appellee and against appellant; and as the case appears to have been fully developed on the trial below, and no good purpose could be served by remanding it for further proceedings in that court, the judgment of the trial court will be reversed, and judgment will be here rendered for appellant, together with all costs incurred in the justice court, the county court, and in this court, and it is so ordered.