## JONES v. STATE NAT. BANK OF GARLAND. (No. 7032.)*

(Court of Civil Appeals of Texas. Austin. Jan. 12, 1927. Rehearing Denied. Feb. 9, 1927.)

**I. Chattel mortgages ⬅198—Uncertain description of mortgaged automobiles held cured as to mortgagor's other creditors by delivery to mortgagee before creditors' rights attached.**

Description of mortgaged property as "four 490 touring cars now stored in Garland in care of R. O. Martin," if insufficient identification of cars owned by Motor Sales Company, of which Martin was custodian, *held* cured as against other creditors of mortgagor, where before creditors' rights attached possession of mortgaged property was delivered to and retained by mortgagee.

**2. Bankruptcy ⬅303(4)—In suit to foreclose chattel mortgage, evidence held sufficient to sustain finding that cars delivered to mortgagee were those covered.**

In suit to foreclose chattel mortgage, in which trustee of mortgagor claimed description of cars was insufficient, evidence *held* to warrant finding in support of judgment that cars delivered to mortgagee were cars intended to be covered by mortgage.

**3. Bankruptcy ⬅184(1)—Where mortgagor was permitted to expose mortgaged goods for sale, trustee, representing creditors whose rights attached prior to delivery to mortgagee, has superior right (Rev. St. 1925, art. 4000).**

Where rights of bankrupt's creditors attached prior to delivery to mortgagee of mortgaged property constituting part of goods, wares, and merchandise daily exposed to sale in mortgagor's business, trustee acquires right superior to that of mortgagee, under Rev. St. 1925, art. 4000, making mortgages void on property constituting part of stock of goods daily exposed to sale.

**4. Bankruptcy ⬅166(3)—Whether bank to which mortgaged property was delivered received preference depended on whether bank had sufficient notice to put it on inquiry.**

In suit to foreclose chattel mortgage given bank, where defense of mortgagor's trustee in bankruptcy was that delivery of mortgaged property constituted preference, whether bank, having no actual knowledge of insolvency, received preference, depended on whether it had knowledge or notice of facts sufficient to put it on inquiry.

**5. Bankruptcy ⬅303(4)—In foreclosure suit evidence held sufficient to sustain finding that mortgagee taking possession within four months of mortgagor's bankruptcy was not chargeable with notice of mortgagor's insolvency.**

In suit to foreclose chattel mortgage, where defense was that bank, to which property was delivered within four months of bankruptcy, received preference, finding in support of judgment that bank did not have notice putting it on inquiry as to mortgagor's insolvency *held* sustained by evidence, where property was taken

on mortgagee's hearing that mortgagor was "crooked," but not necessarily insolvent.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the State National Bank of Garland against Thos. J. Jones, trustee, and others. Judgment for plaintiff, and defendant Jones appeals. Affirmed.

Thomas, Milam & Touchstone, of Dallas, for appellant.

Handley & Handley, of Dallas, for appellee.

BLAIR, J. Appellee sued Motor Sales Company, a corporation, and recovered judgment for $2,033.35 on a note, and for foreclosure of a mortgage lien securing the note covering "four 490 touring cars now stored in Garland, Tex., in care of R. O. Martin." Appellant, Thos. J Jones, trustee in bankruptcy of the Motor Sales Company, was made a 'party upon the allegation that as such trustee he was claiming some interest in the mortgaged property. He answered, attacking the validity of the mortgage, and claiming priority of right to the mortgaged property upon several grounds, each of which was denied by the trial judge before whom the case was' tried without a jury. By this appeal he urges the following questions for our determination:

[1] 1. That the description of the mortgaged property is insufficient to identify it. On March 16, 1920, R. O. Martin, who was named custodian of the property under terms of the mortgage voluntarily delivered to appellee bank four model 490 Chevrolet touring .cars as the property covered by the mortgage, which appellee received and retained possession of for some two months, when it sold them and applied the proceeds in · payment of the note in suit. Otherwise than the claim made by appellant trustee that the enforcement of the mortgage will secure to appellee a preference over other creditors of bankrupt Motor Sales Company, which question will be discussed later, it was not shown that the right of any creditor attached .to the property prior to the time it was voluntarily delivered to mortgagee. It is well settled that an insufficient description of property in a chattel mortgage is cured as against other creditors of mortgagor, where, before their rights have attached, possession of the mortgaged property is delivered to and retained by mortgagee, Smith v. Connor (Tex. Civ. App.) 46 S. W. 267; Randolph v. Brown, 21 Tex. Civ. App. 617, 53 S. W. 825; Bank v. McElroy, 51 Tex. Civ. App. 284, 112 S. W. 801; State v. Norman (Mo. Sup.) 232 S. W. 452; Bank v. Totten, 114 Mo. App. 97, 89 S. W. 65; McFarlan Carriage Co. v. Wells, 99 Mo. App. 641, 74 S. W. 878; 11 Corpus Juris, 472; Marsh v. Wade, 1 Wash. 538, 20 P. 578.

[2] 2. That appellee unlawfully seized four automobiles belonging to the estate of bankrupt, not the property described in the mortgage, and converted them to its own use, and was therefore liable to bankrupt's trustee for their value. The cars were voluntarily delivered to appellee, and the testimony sufficiently warrants a finding in support of the judgment that they were the cars which the parties intended the mortgage should cover.

[3] 3. That the mortgage is void under provision of article 4000, R. S. 1925, relating to mortgages upon property constituting a part of goods, wares, and merchandise daily exposed to sale. Mortgages similar to this one have been held violative of this statute and therefore void, where the automobiles furnishing the security are left at mortgagor's place of business for sale, as to rights of intervening creditors. Bank v. Thompson (Tex. Com. App.) 265 S. W. 884; Bank v. Teich (Tex. Civ. App.) 283 S. W. 552 (writ of error refused). So, if the rights of ·bankrupt's creditors attached prior to the delivery of the property to mortgagee on March 16, 1920, the trustee's right to the property is superior to that of mortgagee.

4. That appellee's rights under the mortgage arose subsequent to the insolvency of mortgagor and subsequent to notice thereof to mortgagee, and to enforce the mortgage would secure to appellee a preference, it having been executed within four months prior to the filing of the petition in bankruptcy. The only contested issue was whether mortgagee had notice of mortgagor's insolvency prior to taking possession of the mortgaged property. Appellee bank's president, who handled the transactions involved, stated that he knew nothing ·of the financial condition of mortgagor when the property was delivered to the bank under the mortgage. Briefly, his testimony was in substance the following: The Motor Sales Company was a corporation with its domicile at Dallas. On or about March 1, 1920, Gus French, one of its officers, and R. O. Martin, both strangers, came to appellee bank and represented that the corporation wanted "to put in a branch of their business" for sale of Chevrolet automobiles in Garland, Tex., with R. O. Martin in charge, and wanted the bank to finance it to a certain extent; which was agreed upon, and the note and mortgage executed, the latter on March 3, 1920. Some eight or nine days later, R. O. Martin, named custodian or trustee of the property in the mortgage, came to witness and told him "that the firm he was workng for (mortgagor) was crooked," because "they had put up some false bills of lading and drawn some drafts against them, and the matter had come to light." Martin wanted to turn the property over to appellee, which appellee accepted on this information. Witness further testified:

"He did not say that they were getting in bad shape financially. It was caused by some trans-

action with one of the banks in Dallas; they had put up some false bills of lading and drawn some drafts against them, and the matter had come to light, but he did not know anything about their financial affairs, but he said they were crooked. I would not infer from their putting up fictitious paper that they were financially embarrassed, but I did think enough of the information to protect the bank. I found out a long time after that that they were in financial straits, but they had a considerable balance in our bank at that time, and if we had known that they were in financial straits we could have offset our loss to that extent, but our note was not then due, and we did not do it. This was the first transaction we had ever had with them. They opened an account with us right then, and had a balance in our bank until some time in April, and so at the time we took possession of the cars and put them in Brown's garage, they had a balance in our bank—it amounted to several hundreds of dollars—I do not recall the amount.

"Ordinarily, if a bank discovers its customers drawing money out against fictitious paper, it would suspect that its customer was insolvent; but the fact would depend on whether the customer was crooked or not. Sometimes the bank will permit itself to be imposed on, and permit the customer to have an unfair advantage. We did not know these people except on information from our city correspondents. I have not said that this concern, or the people who operated it, were or are crooked. Their own agent said that he concluded that they were crooked, and from what he told me I concluded that possibly he was correct, and as a matter of precaution, we took possession of the cars—after he had given us that advice."

An involuntary petition in bankruptcy was filed against Motor Sales Company May 7, 1920, and it was on that day adjudged a bankrupt.

The authority 7 C. J. 154, § 252 (notes 97, 98, 100), construes the present preferential statute to mean the following:

"The amendment of 1910 made a preferential transfer or judgment voidable by the trustee if 'the person receiving it, or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference', thus dispensing with any necessity that the bankrupt should have intended a preference, or that the creditor should have believed that such preference was intended, and substituting the effect of what is done for the intention in doing it."

Or, as said in Heyman v. Third Nat. Bank of Jersey City (D. C.) 216 F. 685:

"Intent to prefer, since the amendment of 1910, is no longer material. The effect of the transaction is substituted for the intent of the debtor. Actual knowledge, or even actual belief, that a preference will result is not required. Neither knowledge nor belief, but reasonable grounds to believe, is made the criterion of proof in such cases."

[4] It is undisputed that appellee bank had no actual knowledge of mortgagor's insolvency when it received the mortgaged property, and the only question here is whether under the undisputed evidence it had knowledge or notice of facts sufficient to put a reasonably cautious and prudent person upon inquiry so as to charge it with reasonable cause to believe that a preference was intended, and that such transfer of the property had the effect of conferring a preference, which was a question of fact to be determined by the trial court from all the facts and circumstances in the case. 7 C. J. 153, § 250.

[5] We think the evidence detailed would warrant a finding in support of the judgment that appellee bank did not have knowledge or notice of such facts when it took possession of the mortgaged property. It knew nothing of bankrupt's financial condition. It had on deposit on that day "several hundred dollars" belonging to bankrupt, which was evidence of mortgagor's solvency; and from all the facts and circumstances appellee bank might have concluded that mortgagor "was crooked," but not necessarily insolvent. Appellee was compelled by statute to take possession of the property to render its mortgage valid as to creditors. So, in view of all the facts and circumstances, the evidence adduced would as reasonably support a finding by the trial judge that mortgagee's knowledge only extended to notice that mortgagor was probably "crooked" as it would a finding that appellee necessarily knew or had notice of facts showing mortgagor insolvent. We find no error in the judgment, and it is affirmed.